1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ANDREW L. MACKEY,                    No.  2:12-cv-1245 TLN CKD P

12              Petitioner,

13      v.                               ORDER AND

14  R.T.C. GROUNDS,                      FINDINGS AND RECOMMENDATIONS

15              Respondent.

16

17  I.  Introduction

18      Petitioner is a California prisoner, convicted of several child-molestation-related offenses,

19  serving a sentence of 66-years-to-life entered in 2008 in the Superior Court of Sacramento

20  County.  He is proceeding through counsel with an application for writ of habeas corpus under 28

21  U.S.C. § 2254.  Respondent has filed a motion to dismiss in which respondent argues that

22  petitioner has failed to exhaust state court remedies with respect to his claims, and that the claims

23  are time-barred.  For the reasons set forth below, the court agrees with respondent in both

24  respects.

25  /////

26  /////

27  /////

28  /////

1

II. Petitioner's Claims

Petitioner presents three claims for relief in his petition: [1]

1. Petitioner's trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment by failing to adequately investigate petitioner's competence to stand trial.

2. The trial court's failure to conduct a competency hearing violated petitioner's right to due process arising under the Fourteenth Amendment.

3. Use of a prior conviction as evidence at trial violated the terms of the plea agreement concerning the prior conviction.

III. Failure To Exhaust

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971).

Petitioner presented the three claims he presents in this action to the California Supreme Court through a petition for collateral relief filed November 15, 2011. The petition was denied by the California Supreme Court on March 14, 2012. In support of the denial, the court cited three cases, including "In re Swain, (1949) 34 Cal.2d 300, 304" without providing any further clarification or comment. The citation to Swain, stands for the following proposition:

> We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts. This procedural requirement does not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; it simply demands of him a measure of frankness in disclosing his factual situation.
>
> The application for the writ is denied without prejudice to the filing of a new petition which shall meet the requirements above specified.

---

[1] "Ground One" identified in petitioner's habeas petition is not a claim for relief, but an argument seeking waiver of any violation of the applicable limitations period, or procedural default, based on the "actual innocence" exception.

2

1     The deficiency identified in Swain can be cured in a subsequent state petition for

2   collateral relief.  See Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986).  When the

3   California Supreme Court denies claims with the citation to Swain referenced above, the court

4   must make an independent review of the record to determine if the claims were alleged with

5   sufficient particularity to satisfy the fair presentation requirement.  Id. at 1319-20.  If the claims

6   were fairly presented, the court will not require that the petitioner return to the California

7   Supreme Court to attempt to exhaust state court remedies.

8     The court has reviewed the petition presented to the California Supreme Court.  While

9   petitioner does present facts in support of his claims, he fails to explain his delay in the

10   presentation of those facts.  This being the case, it appears petitioner could attempt to explain his

11   delay in presenting the facts supporting his claims to the California Supreme Court and then

12   possibly obtain a ruling as to the merits of his claims.  Therefore, petitioner has not exhausted

13   state court remedies.  Normally, dismissal in this court for failure to exhaust state court remedies

14   would be without prejudice.  However, because the court also finds that petitioner's claims are

15   time-barred, as described below, the court will recommend that dismissal be with prejudice.

16   IV.  Statute of Limitations

17     Title 28 U.S.C. § 2244(d)(1) provides:

18
19     A 1-year period of limitation shall apply to an application for a writ
      of habeas corpus by a person in custody pursuant to the judgment of
      a State court.  The limitation period shall run from the latest of –

20
21     (A) the date on which the judgment became final by the conclusion
      of direct review or the expiration of the time for seeking such
      review;

22
23
24     (B) the date on which the impediment to filing an application
      created by State action in violation of the Constitution or laws of
      the United States is removed, if the applicant was prevented from
      filing by such State action;

25
26     (C) the date on which the constitutional right asserted was initially
      recognized by the Supreme Court, if the right has been newly
      recognized by the Supreme Court and made retroactively applicable
      to cases on collateral review; or

27
28     (D) the date on which the factual predicate of the claim or claims
      presented could have been discovered through the exercise of due
      diligence.

3

For purposes of § 2244(d)(1)(D), petitioner's conviction became final on June 8, 2010 when the time for filing a petition for review in the California Supreme Court expired concerning the California Court of Appeal decision affirming petitioner's convictions and sentence.  See Waldrip v. Hill, 548 F.3d 729, 735 (9th Cir. 2008) (where no petition for review is filed with the California Supreme Court, direct review concludes with respect to § 2244(d)(1)(D) forty days after conviction and sentence affirmed by California Court of Appeal).  The limitations period began running the next day and, absent any tolling, ran out one year later on June 8, 2011.  This action was not commenced by petitioner in this court until May 3, 2012 when he submitted his petition for writ of habeas corpus to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 270 (1988).

A.  Statutory Tolling

Title 28 U.S.C. § 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  Petitioner filed a petition for writ of habeas corpus in the Superior Court of Sacramento County on June 7, 2011.  However, because the Superior Court of Sacramento County found that the petition was untimely, the petition was not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2) and there is no tolling.  Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

B.  Equitable Tolling

Petitioner asserts he is entitled to tolling of the limitations period under the "equitable tolling" doctrine.  The statute of limitations applicable in a § 2254 action may be subject to equitable tolling if a petitioner can demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance prevented him from filing on time.  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010).

The purpose of equitable tolling "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court."  Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008) (internal quotation marks omitted).  Nonetheless, "the threshold necessary to trigger equitable tolling . . . is very high, lest the exception swallow the

4

rule." Waldroz -Ramsey v. Pachoke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).  The requirement that petitioner has the burden of establishing "extraordinary circumstance" necessarily suggests the rarity of equitable tolling.  Id. Moreover, equitable tolling of the limitations period requires that the "extraordinary circumstance," rather than oversight, miscalculation or negligence on the part of the petitioner, actually caused the untimely habeas filing.  Id.; Harris, 515 F.3d at 1055.

Here, petitioner asserts the extraordinary circumstance which prevented him from filing on time is his own mental limitation.  In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit articulated a test for use in determining whether mental illness or limitation forms a basis for equitable tolling:

> (1) First, a petitioner must show his mental impairment was an extraordinary circumstance beyond his control, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Id. at 1099-1100.

### 1. Evidentiary Hearing

On May 12, 2014, this court conducted an evidentiary hearing concerning whether petitioner's mental limitations might provide a basis for equitable tolling.  The court heard testimony from five witnesses; petitioner did not testify.  The witnesses included petitioner's grandmother, Joyce Campbell; petitioner's friend, Laura Serowchak; petitioner's former cellmate, David Grecu; Dr. Gordon Ulrey, a clinical psychologist and neuropsychologist; and Dr. Helen Krell, a psychiatrist and neurologist.

/////

/////

1                               a. Motion to Strike

2          At the commencement of the evidentiary hearing, respondent asserted that petitioner

3   failed to comply with the court's pre-hearing order (ECF No. 54) requiring him to produce

4   discovery relating to the hearing within twenty-one days of the order.  Specifically, respondent

5   contended that because petitioner failed to provide material and tests relied upon by Dr. Ulrey in

6   his examination of petitioner, Dr. Ulrey should not be permitted to provide expert opinions.  (EH

7   5-15).[2]  The court concluded that the evidentiary hearing would go forward as scheduled, but that

8   respondent would be permitted to file a motion to strike after the hearing.  Respondent filed a

9   timely motion to strike Dr. Ulrey's opinion testimony (ECF No. 74).  Petitioner filed a response

10  (ECF No. 75), and, thereafter, respondent filed a reply (ECF No. 77).

11         The court has carefully considered all of the briefing.  Of particular import is the fact that

12  petitioner did provide respondent with a copy of Dr. Ulrey's pre-hearing report, (ECF No. 74),

13  (Att.1 9-15), and expert opinion evidence presented at the evidentiary hearing concerning

14  petitioner's mental state is not dispositive as to the issue of equitable tolling.  Accordingly, the

15  court finds that the interests of justice do not require striking Dr. Ulrey's expert opinions.

16                              b. Daubert Objections

17         Respondent correctly points out that the court is required to act as a "gatekeeper" for

18  expert evidence.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  In

19  respondent's brief opposing petitioner's request for an evidentiary hearing, respondent asserted

20  that Dr. Krell's testimony should be precluded under Daubert.  (ECF 50 at 15-18).  Respondent

21  made the same assertion regarding Dr. Ulrey's testimony in his pre-evidentiary hearing brief.

22  (ECF No. 65 at 2).

23         The decision to permit or exclude expert testimony is within the broad discretion of the

24  district court.  See General Electric Co. v. Joiner, 522 U.S. 136 (1997).  The court must find that

25  the testimony is reliable under the three part test found in Fed. R. Evid. 702:  the testimony is

26  /////

27  _____

28  [2] "EH" refers to the transcript of the evidentiary hearing held on May 12, 2014.

1 based on sufficient facts or data; the testimony is the product of reliable principles and method;

2 and the testimony reflects a reliable application of the principles to the facts of the case.

3       Good cause appearing, the court declines to reach respondent's <u>Daubert</u> objections, for it

4 finds that even accepting all of Dr. Krell's and Dr. Ulrey's testimony, petitioner's mental state

5 does not provide a basis for equitable tolling, as explained below.  While the court had initially

6 considered permitting supplemental post-hearing briefing on the <u>Daubert</u> issue, the court

7 concludes that such additional briefing is not required in light of the testimony already adduced at

8 the hearing.

9                   c.  <u>Evidence Presented Regarding Petitioner's Mental Condition</u>

10                     i.  <u>Lay Witness Evidence of Petitioner's Mental Limitations</u>

11       Evidence presented at the evidentiary hearing by witnesses not qualified as medical

12 experts establishes that petitioner has significant mental limitations.[3]  Most notably, evidence was

13 presented indicating that petitioner did very poorly in school, and had a very difficult time

14 retaining more than small amounts of information (EH 19); he had a hard time reading and

15 spelling (EH 22); petitioner continued to have difficulty retaining information into adulthood (EH

16 32); petitioner began hearing voices telling him to do things in his teens (EH 20); petitioner never

17 held significant employment, although he did volunteer at an Elks Lodge cleaning tables, waiting

18 tables, doing dishes (EH 38); petitioner was described by his cellmate as "profoundly mentally

19 ill" during 2010 and 2011 (EH 56);[4] petitioner could not clean himself properly after going to the

20 bathroom ("there would be feces all over the cell daily") (<u>id</u>.); while petitioner could converse

21 with his cellmate, petitioner was not good at taking directions ("when it comes to actually then

22 carrying something out, and just doing something properly, [petitioner] failed constantly" ) (EH

23 59); the cellmate had to make petitioner's bed, and change his sheets (EH 57); at one point, the

24 /////

---

25 [3]  The court generally focuses on evidence presented as to the issues at hand which mostly

26 concern petitioner's cognitive abilities during the limitations period and not as much his
emotional state or ability to act in a generally acceptable manner in social situations.

27 [4]  In subsequent testimony petitioner's cellmate indicated he believed petitioner is "not mentally

28 ill…[but] mentally retarded."  (EH 62).

1    cellmate attempted to teach petitioner how to wash clothes in a bucket, but petitioner would

2    forget how to wash his clothes an hour later.  Id.

3                             ii.  Evidence of Petitioner's Abilities

4            Despite the evidence of petitioner's impairments, evidence demonstrating that petitioner is

5    not completely incapacitated was also presented: petitioner was capable of learning when he was

6    young in a one-on-one setting with a tutor (EH 19, 23); petitioner was proficient in math as a

7    student (EH 23); petitioner obtained a GED when he was either 19, 20 or 21 (EH 23-24);

8    petitioner remembers yearly events such as birthdays and anniversaries (EH 33-34); petitioner

9    testified coherently at his trial (ECF No. 28, Doc. 15 at 347-378); petitioner's grandmother

10   described him as "very kind, sweet, thoughtful" and "outgoing" (EH 34); and during jail visits in

11   2010-2012, he appeared to be oriented in time and space, and knew where he was and who the

12   visitor was (EH 73).

13                              iii.  Expert Testimony

14           With respect to expert testimony, Dr. Ulrey indicated:[5]  that he conducted one

15   approximately 6 hour examination of petitioner on March 17, 2014 (EH 95); based upon tests

16   conducted, petitioner reads at about the fifth or sixth grade level with a "very limited vocabulary"

17   (EH 104-05); petitioner's history is one of somebody who is "pretty severely disabled. . ."  "I

18   mean, this is a guy who hasn't been able to work, doesn't drive a car, hasn't really maintained

19   relationships. . ."  "[B]y all standards of mental health [he is a] very low functioning guy" (EH

20   129).  Petitioner would not be able to "be handed a document, translate it, figure out the plan and

21   then execute it" (EH 113).

22           Dr. Krell testified that she examined petitioner in early 2013 and then again in March,

23   2014.  (EH 144-45).  Based on her examination, she determined that petitioner suffers from

24   schizoaffective disorder (EH 148), obsessive-compulsive disorder, attention deficit disorder and

---

[5]  Doctors Ulrey and Krell presented a great deal of testimony as to petitioner's mental health including, among other things, results of tests they performed, information regarding mood swings, petitioner's response to medications and his emotional state.  The thrust of the court's inquiry, however, is whether those conditions precluded petitioner from either filing a petition for writ of habeas corpus himself, or at least seeking some sort of  help to do so.

epilepsy, and that he requires anti-psychotic and anti-depressant medication as well as mood

stabilizers.  (EH 151).  Dr. Krell also indicated petitioner has a "very limited IQ" and "cognitive

defects."  (EH 154).

More specifically relevant to the questions before the court, Dr. Krell testified:

> I think given his level of intelligence, which is that of an 11-year-old, he would just get too overwhelmed and just couldn't put [a habeas petition] together.  And so I think in terms of diligence, I think he would give up very easily.  So that answers – in terms of my opinion, that answers the diligence questions.

> And then capable.  It's pretty clear that he functions at best at a 6th grade level and does not have the cognitive understanding to be consistent about doing that kind of paperwork or understanding that kind of paperwork.

(EH  157-158).  Later, Dr. Krell indicated it is her opinion that petitioner could not "begin to

understand" legal documents.  (EH 169).

### d. Diligence

The most significant testimony relating to the filing of the instant action was provided by

petitioner's former cellmate, David Grecu.  Grecu testified that it was he who conceived and

executed the filing of the petition for writ of habeas corpus on behalf of petitioner.  (EH 70, 81-

82).  Grecu testified that he initially questioned petitioner about the circumstances of his

conviction after other inmates informed Grecu that petitioner is a sex offender and suggested that

Grecu needed to either harm petitioner physically or take some action to have petitioner removed

from Grecu's cell.  (EH 77).  After speaking with petitioner, Grecu believed petitioner to be

innocent.  (EH 60).  Eventually Grecu told petitioner, "I'm going to file a simple habeas this one

time on your behalf."  (EH 65).

To prepare the habeas petition, Grecu wrote the California Court of Appeal in Sacramento

in petitioner's name, and obtained information about petitioner's direct appeal.  Id.  Grecu

acknowledged that "all the pleadings that were filed on [petitioner's] behalf in state and federal

court," were filed by Grecu.  (EH 72-73).  Petitioner did provide Grecu with "the facts and

circumstances of his story."  (EH 69).

/////

1   Grecu was very clear that petitioner never requested that Grecu assist in filing any

2   documents on his behalf, and that Grecu did so of his own accord.  (EH 68, 81-82).  Grecu

3   testified that he thought that if Grecu helped petitioner with his legal matters, petitioner might

4   behave better in their cell.  (EH 70).

5   2. Analysis

6   After reviewing all of the evidence before the court, the court finds that petitioner is not

7   entitled to equitable tolling because he has not shown that he was diligent in any respect in

8   pursuing his claims.  Petitioner's claims were pursued for him by his cellmate, Grecu, not at

9   petitioner's request, but rather as a way for Grecu to encourage petitioner to behave in the manner

10   Grecu desired.  While the testimony indicates that it is unlikely that petitioner could have

11   adequately completed a petition for writ of habeas corpus by himself, there is no evidence

12   whatsoever that petitioner had any interest in filing a writ, nor that he took any steps to do so

13   himself, or have someone else do it on his behalf.  Indeed, there is nothing before the court

14   indicating that petitioner ever attempted to complete a habeas petition or sought help to do so

15   from his family, a court, prison law library staff, his trial attorney, his appellate attorney, or other

16   inmates.[6]  There is not even any evidence that during the limitations period petitioner proclaimed

17   his innocence to anyone in an attempt to garner help to obtain his release.[7]

18   Given petitioner's clear mental limitations, the amount of work the court would require of

19   petitioner for a finding of equitable tolling would be relatively low.  Nonetheless, it is clear to the

20   court that petitioner's limitations were not so severe as to prevent him from diligently pursuing

21   his rights in any respect.[8]  It does appear from the record that petitioner's ability to function

22   [6]  Grecu did testify that it would have been difficult for petitioner to obtain help from other
23   inmates because revealing the details of his conviction to the wrong inmate could result in
     petitioner being harmed.  (EH 82-83).  Grecu acknowledged, however, that petitioner had access
24   to the prison law library.  (EH 83).

25   [7]  This is particularly noteworthy because Grecu testified that petitioner was capable of explaining
26   the facts of his case, including the court of conviction, and in fact did so when Grecu inquired.
     (EH 64-65).

27   [8]  In Forbess v. Franke, 749 F.3d 837, 841-42 (9th Cir. 2014) the Ninth Circuit found that a
28   petitioner with a mental illness was entitled to equitable tolling despite the fact that he did not

1   improves when he is properly medicated and that at times while incarcerated he has not been

2   properly medicated.  But there is no evidence indicating improper medication deprived petitioner

3   of all ability to pursue his release as the limitations period ran.

4          For all of these reasons, petitioner is not entitled to equitable tolling of the limitations

5   period applicable to this action.

6          C.  Actual Innocence

7          Finally, petitioner argues the limitations period applicable to this action should be waived

8   under the "actual innocence" exception.  The Supreme Court has found that a federal habeas

9   petitioner may have otherwise time-barred claims heard if a credible showing of "actual

10  innocence" is made.  McQuiggin v. Perkins, 133 S. Ct. 1924, 1933.  A credible showing of

11  "actual innocence" occurs when a prisoner shows that it is "more likely than not that no

12  reasonable juror would have convicted him in light of the new evidence."   Id. at 1935.  While

13  petitioner asserts in his petition that he is "actually innocent" and, therefore, the limitations period

14  concerning his claims should be waived, he fails to point to any new evidence in support of his

15  claim.  He simply points to potential biases of the victim which may have motivated her to

16  fabricate her testimony.  This is not an adequate basis for a finding of "actual innocence."

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24

25  pursue any of his § 2254 rights during the limitations period because he suffered from a delusion
    that the FBI had instructed him to "lay low" and would secure his release at a later date.  This

26  demonstrates at least that the diligence requirement can be excused and nothing suggests it would
    not be for a petitioner completely incapacitated (e.g. in a coma) during the limitations period.  As

27  indicated above, however, the evidence presented to this court does not suggest that petitioner
    was completely incapacitated by his mental illnesses such that he was not capable of some

28  diligence in pursuing his rights.

V.    Conclusion

In accordance with the above, IT IS HERBY ORDERED that respondent's motion to strike (ECF No. 74) is denied.

IT IS HEREBY RECOMMENDED that:

1.  Respondent's motion to dismiss (ECF No. 14) be granted;

2.  Petitioner's petition for writ of habeas corpus be dismissed with prejudice as time-barred; and

3.  This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any response to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 12, 2014

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
mack1245.dis(2)

12